him liable as having created, rather than having continued, the nuisance. But the omission for five days, unexplained, to remove a pile of ten logs from the highway, seems so clearly an unreasonable delay, that I am of the opinion that, upon the facts as presented to him, the justice would not have been warranted in holding any other way. Therefore I conclude that, upon appeal from his judgment, such delay should be held unreasonable, as matter of law. Upon this view of the case, the justice was right in holding the defendant liable.

As to the amount of damages, although they seem large, I see no good ground for an appellate court's interfering with the conclusion of the justice thereon.

Judgment of the county court reversed, and that of the justice affirmed, with costs to the plaintiff in this court and in the court below. All concur, except PUTNAM, J., dissenting.

---

(40 App. Div. 552.)

CHENANGO VALLEY SAV. BANK v. DUNN et al.

(Supreme Court, Appellate Division, Third Department. May 9, 1899.)

1. SAVINGS BANKS—AVAILABLE FUND — ACCUMULATIONS — DEPOSITS IN OTHER BANKS—PREFERENCE.

Under Laws 1892, c. 689, § 118, permitting a savings bank to deposit in another bank its "available fund" for current demands, not exceeding 25 per cent. of the paid-up capital and surplus of the depositary, and section 119, permitting "temporary deposits" of accumulations until they can be invested, and section 130, authorizing the receiver of an insolvent bank to prefer such deposits, not exceeding the amount authorized, the burden is on the receiver to show that any portion of a joint deposit of the two funds was unauthorized; the presumption being that the portion in excess of that authorized under section 118 was deposited under section 119, and hence authorized.

2. SAME—INTEREST.

Where a receiver refuses to pay the full amount of a claim as a preferred debt, the claimant, on establishing his claim, is entitled to interest on the portion refused, from the date of the refusal.

Appeal from special term, Broome county.

Action by the Chenango Valley Savings Bank against George W. Dunn, as receiver of the Merchants' Bank of Binghamton, and others. There was a judgment for defendants, and plaintiff appeals. Reversed.

Action by the plaintiff to recover, as a preferred claim, under section 130 of the banking law (Laws 1892, c. 689), the amount of the sum on deposit to the credit of the plaintiff in the Merchants' Bank of Binghamton, of which, on account of its insolvency, the defendant Dunn had been appointed receiver. The trial court allowed the amount claimed as a general debt against the insolvent bank, but held that it was not entitled to a preference under the above section. Judgment was entered directing that it be paid by the receiver pro rata with other creditors, and allowing costs against plaintiff to such receiver. From such judgment this appeal is taken.

Argued before PARKER, P. J., and LANDON, HERRICK, PUTNAM, and MERWIN, JJ.

Carver, Deyo & Jenkins, for appellant.
Lyon, Painter & Hinman, for respondent Dunn.

PER CURIAM.   Section 130 of chapter 689 of the Laws of 1892, known as the "Banking Law," provides that the receiver of an insolvent bank, after providing for the payment of its circulating notes, if it has any, shall apply all its property to the payment in full of any sum or sums of money deposited therewith by any savings bank, but not to an amount exceeding that authorized to be so deposited by the provisions of this chapter, etc.   It appears in the case before us that at the time the Merchants' Bank, of which the defendant is receiver, was closed by the banking department as being insolvent, the Chenango Valley Savings Bank had on deposit to its credit therein the sum of $50,943.50.    Within the provisions of section 130, above cited, it was the duty of the defendant to pay the whole of that amount to the savings bank, from the assets of the insolvent bank, in preference to all claims other than its circulating notes, unless such sum exceeded the amount which the savings bank was authorized to deposit under the provisions of the chapter above cited.    To the extent that it exceeded such amount, the receiver was justified in refusing to prefer it. The right of a savings bank to make deposits in another bank is given by sections 118 and 119 of such chapter.   By those two sections two distinct funds are recognized as the subject of deposit by the savings bank:   First, a fund not exceeding 10 per cent. of its deposits, which may be kept uninvested by the savings bank, and on hand, "for the purpose of meeting current payments and expenses in excess of its receipts."   It is termed in section 118 an "available fund," and the savings bank is authorized to deposit it in other banks; but in no one bank may it deposit a greater portion of such fund than shall equal 25 per cent. of the paid-up capital and surplus of such bank.    It is the evident purpose of the statute that all the moneys received by the savings bank shall be loaned and invested in the securities authorized by section 116 of that act, except this available fund, which may be kept as a permanent deposit, under the limitation above cited.    Secondly, the legislature, recognizing the fact that a savings bank may, in addition to this available fund, accumulate money faster than it can find proper investments for the same, provided, in section 119, that "temporary deposits" might be made of such accumulations, in other banks, "until such time as the same can be judiciously invested in the securities required by this article."   No limitation is placed upon the amount of such moneys which may be deposited in any one bank.   The officers of the savings bank are authorized to use their own judgment as to the amounts of such temporary deposits, subject only to the supervisory control of the superintendent of banks, which the same section imposes upon them.   The capital stock of the Merchants' Bank was $100,000, and, as a matter of fact, when the deposits above mentioned were made by the savings bank the former bank had no surplus whatever, although it did at that time report to the department, and advertise, that it had a surplus of $85,000.   And, if such deposits of $50,943.50 were authorized by the provisions of section 118 only, the question would be presented as to whether anything more than $25,000 thereof (being 25 per cent. of the capital only of the Merchants' Bank) should be preferred.   But, if we may consider that such deposit of $50,943.50 was also authorized by the provisions of

section 119, then, there being no limit to the amount which might be so deposited, there is not any reason apparent why the whole of such deposit was not authorized, and therefore to be preferred. In its decision the trial court finds as a fact that during the period between December 2, 1893, and January 21, 1895,—being little more than a year,—the plaintiff deposited with the Merchants' Bank sums aggregating $50,943.50, for the purpose of meeting current payments and expenses in excess of its receipts, "and as temporary deposits." Clearly, it was not forbidden or irregular for the savings bank to deposit with one bank, and in one account, money for the purpose of meeting its current expenses, and also such accumulations as it was holding for investment; that is, it might mix in one deposit the whole or a portion of its available fund, and also temporary deposits awaiting investment; and, if it did so, the whole of such deposit would be authorized. Under the above finding of fact, which is also a conceded fact in the case, we must assume that the deposit in question was just such a one as that. The plaintiff availed itself of the authority given by the two sections (118 and 119) to deposit a part, at least, of its available fund, and also such amount of its funds awaiting investment as it deemed judicious, with the Merchants' Bank. So far as its available fund was concerned, it was limited to a certain proportion of the Merchants' Bank's capital and surplus, but, so far as the other funds were concerned, the amount which it was authorized to deposit was unlimited.

It is urged upon us by the defendant that it does not appear that any of such deposits were of funds awaiting investment, and hence the court must assume that it was authorized, if at all, only by the provisions of section 118. Also, it is further urged that, if it must be conceded that some part of such deposit was of funds awaiting investment, yet it does not appear but that it was a small fraction only of the whole deposit, and that, the rest being of the available fund, it exceeded the amount allowed by section 118, and was therefore not authorized. But we are not to assume, under such finding, that the plaintiff had deposited any larger amount of its available fund than was authorized. It being shown that the savings bank made this deposit for the purposes authorized by the two sections, in the absence of proof to the contrary it cannot be said that any part of such deposit was without authority. There is a plain authority appearing for the deposit, as a whole; and hence the preference given by section 130 must be given it by the defendant, unless he makes it to appear that such prima facie authority does not in fact exist.

It is strongly urged upon us by the defendant's counsel that the words "and as temporary deposits," used in the concession and finding, were not intended to mean such "temporary deposits" as are named in section 119, and that the finding does not warrant the conclusion that any part of such deposit was of that character. We are not at liberty to construe such concession by an occurrence that does not appear in the record before us. The plain reading of the finding is to the effect that the deposit was made for the two purposes above mentioned, and such is the claim now presented by the appellant's counsel. Moreover, why should not the deposit be now so consid-

ered, without reference to the purpose of the savings bank in making it? All the moneys accumulated by a savings bank are the excess of its daily receipts over its current expenses and payments; and if the sum of $50,000 is deposited with one bank, and in one account, with the intent of checking against it for expenses incurred, in the event that an emergency requires it, and of withdrawing a portion thereof as soon as it can be judiciously invested, authority for so doing is found in the two sections above cited. And the proportion of the amount which should be applied to expenses and that which should be applied to investments is a matter which should be left to the final judgment of the savings bank. At least, such bank should not be forced to treat any part as an unauthorized deposit because it had an erroneous idea when it made the deposit that the surplus of the bank was much larger than it proved to be. The statute, since the amendment of 1892, evidently intends to give a preference to all deposits, whether they are a part of the available fund, or a part of those temporary ones awaiting investment; and, inasmuch as the deposit in question might lawfully have been made under the authority of section 119, there is no good reason apparent why it should not be justified by it. Certainly it seems to be incumbent upon the receiver to show affirmatively that some portion, and how much, of such a deposit was unauthorized, if he would justify a refusal to prefer the same. Bank v. Coit, 104 N. Y. 532, 537, 11 N. E. 54.

Under this view of the case, it becomes unnecessary to determine whether or not the savings bank was authorized to deposit, under the provisions of section 118, an amount equal not only to 25 per cent. of the capital, but also 25 per cent. of $85,000, the reported surplus, of the Merchants' Bank. Having the authority of section 119, as well as that of section 118, for making this deposit, the whole amount of it is preferred.

It is conceded that when the bank was closed, on January 21, 1895, it was indebted to the plaintiff in the sum of $50,943.50, with interest thereon at the rate of 3 per cent. per annum from January 1, 1895, to such date; making in all the sum of $51,028.40. It being the duty of the receiver to pay that whole amount, as a preferred debt, as soon as he could reasonably ascertain that there were sufficient assets properly applicable thereto to pay it, and he having on the 29th day of July, 1895, paid $25,000 thereof, and then declined to pay the balance, as not being preferred, and thereby necessitated this action to determine that question, it would seem that the plaintiff is entitled to interest from that date on such balance unpaid. People v. E. Remington & Sons, 59 Hun, 307, 12 N. Y. Supp. 829; Id., 126 N. Y. 679, 28 N. E. 249.

The judgment should be reversed, and a new trial granted, costs to abide the event.